LYNN MARIE PARO & another *vs.* LONGWOOD HOSPITAL.

Suffolk.    September 12, 1977. — November 16, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Medical Malpractice. Negligence,* Medical malpractice. *Constitutional Law,* Separation of powers, Equal protection of laws. *Due Process of Law,* Medical malpractice tribunal, Bond, Jury trial.

General Laws c. 231, § 60B, which requires that all actions alleging medical malpractice be presented to a tribunal charged with determining, on the basis of an offer of proof made by the plaintiff, whether "a legitimate question of liability appropriate for judicial inquiry" is presented and, on a finding that such a question does not exist in a plaintiff's case, imposing a bond on the plaintiff as a condition for further prosecution, bears a rational relationship to a proper legislative objective and does not deny a plaintiff equal protection of the laws in that it neither subjects victims of other torts to such a procedure nor requires imposition of a bond on defendants. [648-651]

The requirement of G. L. c. 231, § 60B, that, as a condition for further prosecution, a bond be imposed on a plaintiff whose medical malpractice claim is found to have no legal merit does not violate due process of law [651-654]; nor does it infringe on a plaintiff's rights under art. 11 of the Massachusetts Declaration of Rights [654]; nor does the bond requirement impair the substance of a plaintiff's right to a

jury trial under art. 15 of the Massachusetts Declaration of Rights [654-655]; nor does the tribunal procedure of c. 231, § 60B, abrogate any substantive right of recovery without providing a reasonable alternative [655].

The tribunal procedure for medical malpractice suits established by G. L. c. 231, § 60B, does not constitute a legislative obstruction to a judicial hearing in violation of art. 30 of the Massachusetts Declaration of Rights '[655-657]; nor does it violate art. 30 in allowing the two lay panel members to override the judge since the judge-member has the sole responsibility for deciding purely legal questions [657].

CIVIL ACTION commenced in the Superior Court on May 10, 1976.

A motion to dismiss was heard by *Dimond,* J., following a report by a medical malpractice tribunal.

The Supreme Judicial Court granted a request for direct appellate review.

*Andrew C. Meyer* for the plaintiffs.

*John J. O'Brien* for the defendant.

*Acheson H. Callaghan, Jr., & Jeffrey F. Jones,* for Medical Malpractice Joint Underwriting Association of Massachusetts, amicus curiae, submitted a brief.

*Arnold Manthorne, John F. Sherman, III, Dennis J. White & William J. Speers, Jr.,* for The Massachusetts Medical Society, amicus curiae, submitted a brief.

QUIRICO, J.   This case presents, as a matter of first impression,[1] constitutional challenges to G. L. c. 231, § 60B, which establishes a procedure for the screening, by a tribunal, of all actions for "malpractice, error or mistake against a provider of health care." See St. 1975, c. 362, § 5. The plaintiffs' medical malpractice action was dismissed when they failed to satisfy a $2,000 bond requirement imposed on them, after a tribunal hearing, as a condition for the continuance of their action. They have appealed the dismissal, contending that the tribunal procedure violates equal protection, due process, and separation of powers

---

[1] In *Austin* v. *Boston Univ. Hosp.,* 372 Mass. 654 (1977), we answered questions as to the interpretation of § 60B that were certified to us by the United States District Court, District of Massachusetts. No constitutional challenge to the procedure was made. See *id.* at 655 n.3.

provisions of the Massachusetts and United States Constitutions. We granted an application for direct appellate review. G. L. c. 211A, § 10 (A).

Robert Paro brought this action in his own right and as next friend for his daughter Lynn Marie. Lynn Marie was born on the premises of the defendant Longwood Hospital (hospital), and employees of the hospital aided in her delivery. The plaintiffs assert that, following the birth, these employees negligently applied silver nitrate to Lynn Marie's eyes,[2] and negligently failed to administer proper care to correct their mistake after the improper application. They contend that this negligence resulted in a scar on Lynn Marie's left cheek which remains visible to this day.[3]

Following the filing of the complaint and answer, both parties appeared before a malpractice tribunal constituted pursuant to G. L. c. 231, § 60B, the recently enacted medical malpractice tribunal procedure. The plaintiffs made an offer of proof and the hospital report and some photographs of Lynn Marie were entered in evidence. The panel decided for the defendant, holding "that the evidence submitted by the plaintiff, even if properly substantiated, [was] not sufficient to raise a legitimate question of liability appropriate for judicial inquiry." A bond of $2,000 was imposed on the plaintiffs as a condition for continuance of the action. A motion for reduction of the bond amount, on grounds of financial hardship, was denied. When the plaintiffs did not file the bond within the allotted period, the action was dismissed.

General Laws c. 231, § 60B, was enacted in 1975 as part of a comprehensive package designed to ensure the continued availability of medical malpractice insurance at a reasonable cost. St. 1975, c. 362. Section 60B requires that all actions alleging medical malpractice be presented, within fifteen days of the filing of the defendant's answer,

---

[2] According to the plaintiff's brief, silver nitrate is routinely applied to the eyes of a newborn child to prevent infection.

[3] At the commencement of the action, Lynn Marie was ten years old.

to a tribunal consisting of a Superior Court judge, an attorney, and a representative of the health care industry,[4] the latter two appointed by the judge. The tribunal is charged with determining, on the basis of an offer of proof made by the plaintiff, whether "a legitimate question of liability appropriate for judicial inquiry" is presented. If the panel decides that such a question does not exist in a plaintiff's case, and thus finds for the defendant, the judge-member is required to impose a bond on the plaintiff as a condition for further prosecution. The bond is payable to the defendant for his costs if he ultimately prevails. The statute specifies that the bond amount be set at $2,000, but provides discretion to the judge to increase the amount or, if he finds that the plaintiff is indigent, to decrease it. If the plaintiff does not file the required bond within thirty days, the action must be dismissed. *Austin* v. *Boston Univ. Hosp.*, 372 Mass. 654, 661 (1977).

The Paros attack the statutory procedure by alleging that it is in violation of the Constitutions of both Massachusetts and the United States on equal protection, due process, and separation of powers grounds. We deal with each claim to the extent that it is properly raised in this case, and find no constitutional impediment.

1. *Equal protection of the laws.* The plaintiffs contend that two classifications made by the tribunal statute — medical malpractice victims versus victims of other torts, and plaintiffs versus defendants[5] — violate their rights to equal protection of the law as guaranteed by the Four-

---

[4] If the defendant is a physician, the health care member must also be a physician. If the defendant is any other health care provider, the third member must be "a representative of that field of medicine in which the alleged tort or breach of contract occurred." G. L. c. 231, § 60B.

[5] The plaintiffs also argue that a third classification made by the statute violates equal protection guaranties — medical malpractice tortfeasors versus all other tortfeasors. Even if a basis for challenge existed here, the plaintiffs would have no standing to raise it since they belong to neither class of tortfeasors. *Massachusetts Comm'n Against Discrimination* v. *Colangelo,* 344 Mass. 387, 390-391 (1962). See *Broadrick* v. *Oklahoma,* 413 U.S. 601, 610-611 (1973).

teenth Amendment to the Constitution of the United States and comparable provisions of the Massachusetts Constitution. We disagree.

Classification is an integral part of the legislative task and will not be interfered with by a judicial body unless the distinctions drawn by the enactment are "arbitrary or irrational," or result in "invidious" discrimination. *Pinnick* v. *Cleary,* 360 Mass. 1, 28 (1971). Two standards of review have been developed to judge the arbitrariness and invidiousness of legislative acts. See *San Antonio Independent School Dist.* v. *Rodriguez,* 411 U.S. 1, 16-17 (1973). The first test, applied whenever a legislative discrimination "trammels fundamental personal rights or is drawn upon inherently suspect distinctions," *Zayre Corp.* v. *Attorney Gen.,* 372 Mass. 423, 433 (1977), quoting from *New Orleans* v. *Dukes,* 427 U.S. 297, 303 (1976), requires, for the sustenance of the statute, a showing that the difference in treatment is necessary to the promotion of a compelling State interest. *Commonwealth* v. *Henry's Drywall Co.,* 366 Mass. 539, 542 (1974). *Shapiro* v. *Thompson,* 394 U.S. 618, 634 (1969). Where there is no infringement of fundamental rights or any suspect class, a statutory discrimination will be upheld if it is "rationally related to a legitimate State purpose."[6] *Zayre Corp., supra* at 433.

A party challenging the constitutionality of a legislative enactment bears the burden of proving that the proper standard of review is not satisfied. *Zayre Corp., supra* at 433. *Consolidated Cigar Corp.* v. *Department of Pub.*

---

[6] The plaintiffs contend that a third equal protection standard, falling between the "rational basis" and "strict scrutiny" tests, has been recognized by the Supreme Court of the United States. The existence of this so called "strict rationality" test has been a matter of recent controversy. See, e.g., *Massachusetts Bd. of Retirement* v. *Murgia,* 427 U.S. 307, 318-321 (1976) (Marshall, J., dissenting); Gunther, Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv. L. Rev. 1 (1972). We take no position on the question here, since this case presents no classification or interest which even arguably would require the application of a test that is stricter than the "rational basis" standard. See, e.g., *Eisenstadt* v. *Baird,* 405 U.S. 438 (1972) (privacy); *Reed* v. *Reed,* 404 U.S. 71 (1971) (sex).

*Health,* 372 Mass. 844, 851 (1977). The burden is an onerous one; a reviewing court will presume a statute's validity, and make all rational inferences in favor of it. *Commonwealth* v. *Henry's Drywall Co., supra* at 541. The Legislature is not required to justify its classifications, nor to provide a record or finding in support of them. *Pinnick, supra* at 28. In order to prevail, therefore, a challenger must affirmatively show that no factual situation can be conceived that will support the reasonableness of the enactment. "The Legislature, when it acts, 'is presumed to be supported by facts known to the legislature unless facts judicially known or proved preclude that possibility.' *South Carolina State Hy. Dept.* v. *Barnwell Bros. Inc.,* 303 U.S. 177, 191 [1938]." *Pinnick, supra* at 32 (concurring opinion of Tauro, C.J.). "In the absence of some factual foundation of record establishing the lack of any conceivable basis for the legislation we, unless the statute is patently offensive, will defer to the legislative finding of facts." *Commonwealth* v. *Henry's Drywall Co., supra* at 543 n.5.

No claim is made in this case that a fundamental interest or suspect class is involved, and it is therefore conceded that the applicable test is the rational basis standard.[7] Additionally, the plaintiffs admit that the purpose that the statute is intended to serve, assuring the continued availability of medical malpractice insurance, see St. 1975, c. 362, is a proper object of legislation. The plaintiffs argue, however, that the two classifications that they challenge do not actually promote this goal.

The record of the proceedings below does not indicate that any findings of fact were made or requested on the question whether the tribunal procedure was rationally related to its stated purpose. An evidentiary hearing and findings of fact may be appropriate in a constitutional challenge to a statute, *Henry's Drywall Co., supra* at 541 n.4; factual assertions in an appellate brief are not a substitute. See *Bannish* v. *Bannish,* 357 Mass. 279, 281

---

[7] The plaintiffs make this concession although they argue the existence of a third tier of equal protection analysis. See note 6 *infra.*

(1970); *Poll-Parrot Beauty Salons, Inc.* v. *Gilchrist Co.*, 296 Mass. 451, 452 (1937). Therefore, unless the legislation here is patently offensive, we must defer to the findings implicit in the enactment. *Henry's Drywall Co., supra* at 543 n.5. We find no patent offense. It is not open to us to say that the Legislature could not reasonably have concluded that the imposition of a screening procedure and a bond requirement would discourage frivolous medical malpractice claims, thus reducing the losses to the insurance companies and enhancing the likelihood of the future availability of coverage.[8] Neither can we say that the imposition of the bond requirement on plaintiffs but not on defendants is unreasonable. Discrimination between plaintiffs and defendants is not per se unconstitutional; such classifications must merely satisfy the general rationality standard to survive. *Manganaro Drywall, Inc.* v. *White Constr. Co.*, 372 Mass. 661, 663-664 (1977). The Legislature could reasonably have determined that the bulk of frivolous malpractice litigation resulted from plaintiffs who filed and prosecuted suits without having a legally sufficient claim. That the imposition of a bond requirement on defendants might also eliminate unnecessary litigation does not undermine the statute's constitutionality. It is well settled that a Legislature may address a problem one step at a time without violating equal protection guaranties. *Henry's Drywall Co., supra* at 546. *Williamson* v. *Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955). We thus find no merit in the plaintiffs' equal protection challenge.

2. *Due process.* The plaintiffs raise both procedural and substantive due process challenges to the tribunal procedure, and allege that it is in violation of the jury trial (art. 15) and purchase of justice (art. 11) clauses of the Massachusetts Declaration of Rights. They argue principally that the bond requirement cuts off their access to

---

[8] For a discussion of the effectiveness of the Massachusetts procedure in screening doubtful claims, see McLaughlin, A Look at the Massachusetts Malpractice Tribunal System, 3 Am. J. L. & Med. 197, 201-202 (1977).

the courts, thus denying them their constitutional right to be heard.[9]

In limited circumstances statutes that have imposed financial obstacles to the obtaining of access to the courts have been struck down on due process grounds. Most of these cases have involved challenges by criminal defendants, for whom a judicial hearing is a matter of substantial importance. See, e.g., *Douglas* v. *California*, 372 U.S. 353, 354-358 (1963); *Griffin* v. *Illinois*, 351 U.S. 12, 16-20 (1956). A small number of cases have sustained due process challenges to statutes that presented financial obstacles to the filing of a civil suit. E.g., *Boddie* v. *Connecticut*, 401 U.S. 371, 380-383 (1971). These cases, however, have been restricted to situations where a fundamental right of the plaintiff is involved, and where no means of satisfaction as an alternative to the courts is available. *Ortwein* v. *Schwab*, 410 U.S. 656, 658-660 (1973). *United States* v. *Kras*, 409 U.S. 434, 443-446 (1973).

We need not and do not decide whether a financial obstruction to the institution of a medical malpractice suit would fall into this limited category. The constitutional issue is avoided in this case because of the wide discretion that the statute gives to the judge to set the bond amount. As long as the discretion is exercised without unreason-

---

[9] The plaintiffs also argue that the statute violates their right to procedural due process in other ways. They claim that the absence of a provision in the statute for challenging the composition of the panel, in case of some partiality of a member, made the procedure unfair. They also contend that the requirement that the hearing be held within fifteen days of the filing of the defendant's answer did not give them a sufficient opportunity for discovery. However, neither of these assertions was raised below by an appropriate motion; they are thus not properly before us now. *Royal Indem. Co.* v. *Blakely,* 372 Mass. 86, 87-88 (1977). *Trustees of the Stigmatine Fathers* v. *Secretary of Administration & Fin.,* 369 Mass. 562, 565 (1976).

The plaintiffs also argue, with some support from other jurisdictions, see, e.g., *Simon* v. *St. Elizabeth Medical Center,* 3 Ohio Op. 3d 164 (1976), that the admission in evidence, at a trial, of the tribunal's finding, would violate their right to a jury trial and their right to confront the witnesses testifying against them. The Paros, however, did not go to trial, and these questions are thus not presented by the case. See *Massachusetts Comm'n Against Discrimination* v. *Colangelo,* 344 Mass. 387, 390-391 (1962).

ably prohibiting meritorious claims, no constitutional violation will exist.

The issue here falls within the principles set forth in *Damaskos* v. *Board of Appeal of Boston,* 359 Mass. 55 (1971). In that case the plaintiffs challenged St. 1956, c. 665, § 11, a provision allowing a Superior Court judge to require a bond from a party who was appealing a decision of the zoning board of appeal of Boston. *Id.* at 56. The statute provided that the amount of the bond be set at "such a sum as shall be fixed by the court, to indemnify and save harmless the person or persons in whose favor the decision was rendered from all damages and costs which he or they may sustain in case the decision . . . is affirmed." *Id.* at 56 n.1 (emphasis omitted). This court stated that the provision attached was intended to discourage frivolous appeals, but not intended to obstruct unreasonably those claims with merit. *Id.* at 64. The court held that the statute met constitutional standards as long as the judge exercised his discretion in setting the bond amount to accomplish these purposes. *Id.* at 63-64.

The medical malpractice tribunal procedure satisfies the standard set by the Damaskos court. No bond is required for claims that the tribunal determines have some legal merit. This alone might be sufficient to satisfy the Damaskos standard, since it can be reasonably argued that any claim that does not satisfy the tribunal is of questionable merit, and thus is not entitled to the protection requested. We need not go so far, however, since the statute provides the judge with discretion in setting the bond amount for those cases that the panel finds have no legal merit. The judge is authorized by the statute (G. L. c. 231, § 60B) to set the bond at $2,000 or higher. He is also authorized to fix an amount below $2,000 where he finds that the plaintiff is indigent,[10] but he may not eliminate the requirement of a bond. The $2,000 level is not unreasonably

---

[10] Indigency is not defined in this section. General Laws c. 261, § 27A, inserted by St. 1974, c. 694, § 3, relating to the payment of court costs by indigent litigants, defines an indigent as "a person who is unable to pay the fees and costs of the proceeding in which he is involved, or is unable to do so without depriving himself or his dependents of

burdensome for nonindigent plaintiffs whose claims have already been the subject of adverse findings by the statutory tribunals. Thus the procedure conforms to the Damaskos holding and does not violate constitutional principles.

The plaintiffs next contend that their rights under art. 11 of the Massachusetts Declaration of Rights "to obtain right and justice freely, and without being obliged to purchase it," have been violated. The object of this provision is to guarantee the availability of equal justice, "that all litigants similarly situated may appeal to the courts both for relief and for defence under like conditions and with like protection and without discrimination." *Old Colony R.R.* v. *Assessors of Boston,* 309 Mass. 439, 450 (1941), quoting from *Arizona Commercial Mining Co.* v. *Iron Cap Copper Co.,* 236 Mass. 185, 194 (1920). *Universal Adjustment Corp.* v. *Midland Bank Ltd.,* 281 Mass. 303, 320 (1933). In the context of this case there is no substantial difference between the claimed right under art. 11 and the corresponding rights under the equal protection clause of the Fourteenth Amendment to the United States Constitution. See *Old Colony R.R.* v. *Assessors of Boston, supra,* and since the requirements of the latter are satisfied, see *infra* at 648-651, the plaintiffs' rights under art. 11 are not violated.

The plaintiffs also argue that the bond requirement violates their right to a jury trial because it obstructs their access to a jury. Art. 15, Massachusetts Declaration of Rights. The right to a jury trial is not absolute; it "may be regulated as to the mode in which the right shall be exercised so long as such regulation does not impair the substance of the right." *Orasz* v. *Colonial Tavern, Inc.,* 365 Mass. 131, 134 (1974), quoting *H.K. Webster Co.* v. *Mann,* 269 Mass. 381, 385 (1929). We have previously upheld the constitutional validity of G. L. c. 231, § 104, which requires a defendant to post a bond of one hundred dollars as a condition for exercising his right to remove a District

the necessities of life, including food, shelter and clothing." This definition provides a judge with sufficient guidance and discretion to accomplish the goals outlined here.

Paro *v.* Longwood Hospital.

Court action to the Superior Court in order to obtain a jury trial. *H.K. Webster Co.* v. *Mann, supra* at 385. See also *Higgins* v. *Boston Elevated Ry.*, 214 Mass. 335, 336 (1913). The procedure for referring issues of fact to an auditor prior to trial has also been upheld against a right to jury trial challenge. *Baldassare* v. *Crown Furniture Co.*, 349 Mass. 183, 190 (1965). The limited obstruction presented by the medical malpractice tribunal procedure does not impair the substance of the jury trial right. Since the judge is required to set the bond so as not unreasonably to burden meritorious suits, no art. 15 violation exists. Cf. *Damaskos* v. *Board of Appeal of Boston, supra* at 63-65.

The plaintiffs finally assert that the tribunal procedure is unconstitutional because it abrogates their common law rights without providing a reasonable alternative. This is essentially a substantive due process argument.

This court has never been squarely presented with the issue of whether the Legislature can abrogate a common law right without providing a substitute. *Pinnick* v. *Cleary*, 360 Mass. 1, 15 (1971). The question need not be decided here for two reasons. First, § 60B does not eliminate any substantive right of recovery possessed by the plaintiffs; it merely alters the procedure for enforcing that right. Cf. *Pinnick* v. *Cleary, supra.* Secondly, even if it were assumed that some substantive rights of the plaintiffs had been eliminated, the new tribunal procedure itself is a reasonable substitute. The rights lost by the plaintiffs are offset by the fact that as consumers they may obtain medical services at a lower cost than might have been charged if the tribunal procedure did not exist. Cf. *Pinnick, supra* at 22-23. Therefore this due process challenge fails.

3. *Separation of powers.* The plaintiffs contend that § 60B violates art. 30 of the Declaration of Rights of the Massachusetts Constitution.[11] They claim that the mal-

---

[11] Article 30 provides: "In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men."

practice panel falls within the legislative branch of the government, and that it interferes with the judiciary because its findings are admissible at trial, because it obstructs access to a judicial hearing, and because its two nonjudicial members can override decisions of the judge. We do not address the first claim because, since the plaintiffs did not go to trial and did not have the finding admitted against them, they have no standing to raise the issue. *Massachusetts Comm'n Against Discrimination* v. *Colangelo,* 344 Mass. 387, 390 (1962).

Article 30 requires that each of the legislative, executive, and judicial departments maintain its independence from the others, and that it shall not exercise any powers of the other two departments. However, the exact lines between what constitutes legislative, executive, and judicial powers have never been precisely drawn. *Commonwealth* v. *Jackson,* 369 Mass. 904, 921 (1976). *LaChapelle* v. *United Shoe Mach. Corp.,* 318 Mass. 166, 170 (1945). "[W]e recognize that an absolute division of the three general types of functions is neither possible nor always desirable." *Opinion of the Justices,* 365 Mass. 639, 641 (1974). "Various powers which, regarded by themselves in the abstract, might be deemed legislative or executive have been considered proper to be exercised by courts because they were intimately connected with and necessary or auxiliary to the exercise of strictly judicial powers." *LaChapelle, supra* at 170. "Some flexibility in allocating functions whose classification would be at best ambiguous is no doubt desirable, so long as it 'creates no interference by ... [one] department with the power of ... [another] department.' *Opinion of the Justices,* 208 Mass. 610, 613 (1911)." *Opinion of the Justices,* 365 Mass. 639, 642 (1974).

The contention that the malpractice tribunal is a legislative body which obstructs entrance to the judicial system fails on two grounds. First, as we have previously discussed,[12] the tribunal procedure does not act as an

---

[12] See *infra* at 652-654.

obstruction because the judge has discretion to set the bond amount at a level that will not unduly burden meritorious suits. Additionally, the tribunal procedure, in its role as a first step in obtaining judicial access, does not function as a part of the legislative department, but as a part of the judicial department. The role of the tribunal in hearing the plaintiff's offer of proof, receiving evidence, and determining the legal sufficiency of the claim, is a part of the judicial process at the preliminary stages of an action seeking damages for alleged medical malpractice. See *LaChapelle, supra* at 168-170. The tribunal's intimate connection with the judicial proceeding makes it clear that the hearing procedure is itself a part of the judicial process. There is no violation of art. 30. See *LaChapelle, supra* at 170; *Boston, petitioner,* 221 Mass. 468, 473-474 (1915); *Kingman, petitioner,* 153 Mass. 566, 580 (1891).

Finally, the plaintiffs argue that § 60B is unconstitutional because it allows the two lay panel members to override the judge in the decision of purely legal issues, such as questions relating to the admissibility of evidence. See *Wright* v. *Central Du Page Hosp. Ass'n,* 63 Ill. 2d 313 (1976). On its face the statute is silent as to the allocation of responsibility for deciding these matters. However, § 60B does provide the judge-member of the tribunal with a preeminent role in the entire process: he chooses the other two members of the panel, and he sets the amount of the bond to be imposed. The lawyer and health service representative are placed on the panel because of their expertise in relevant fields. This expertise is useful in deciding the primary question faced by the tribunal — whether the plaintiff has presented a legally sufficient claim. As to the determination of this issue, the tribunal decision is a collective one, with all three panel members participating equally. The responsibility for deciding purely legal questions, however, is left solely with the judge-member of the tribunal, and thus no interference with his function occurs.

4. None of the constitutional challenges to the medical malpractice tribunal procedure, G. L. c. 231, § 60B, that

were raised have been sustained. The action was therefore properly dismissed.

*Judgment affirmed.*